

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00148-CV
_____

DARIN G. CYPHERS, INDIVIDUALLY AND AS DULY AUTHORIZED AGENT
OF PRESIDENTIAL ONE ENTERPRISES, LLC, Appellants

V.

DENNIS D. CUNNINGHAM, INDIVIDUALLY AND FOR AND ON BEHALF OF
MARGARET M. CUNNINGHAM, Appellee

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-317616-20

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Darin Cyphers—acting as an agent for his company, Presidential One Enterprises, LLC—filed an unlawful mechanic's lien on property owned by Margaret Cunningham. Consequently, when Margaret sold her property, the title company withheld a portion of her sales proceeds, and Margaret—represented by her son, Appellee Dennis Cunningham—sued to challenge the lien's validity.[1] While the case was pending, the title company released the withheld funds. Nonetheless, the parties proceeded to a bench trial on Cunningham's remaining requests for relief and on Cyphers's counterclaims, and the trial court found in Cunningham's favor and awarded him costs and attorney's fees.

Cyphers now appeals, complaining that (1) the trial court lacked subject matter jurisdiction to award Cunningham attorney's fees because he lacked standing to challenge the lien's validity and by the time of trial his claims were moot anyway;

---

[1]Although the style of the case indicates Dennis's participation both in his individual capacity and as Margaret's representative, it is undisputed that the property at issue was owned by Margaret alone. The trial court did not distinguish between Dennis's two capacities in its judgment or findings of fact and conclusions of law.

Similarly, while Cyphers was named as a defendant in both his individual capacity and as an agent of Presidential One Enterprises, LLC, it is undisputed that the lien at issue was filed in Presidential One Enterprise's name, and Presidential One Enterprises—not Cyphers individually—was the party that filed counterclaims. But again, the trial court did not distinguish between the two in its judgment or findings and conclusions.

The parties gloss over these distinctions in their briefs and do not raise them as issues on appeal, nor do they ask us to modify the judgment on this basis. Therefore, we do not address them.

(2) there was insufficient evidence to support the fee award because Cunningham failed to segregate his recoverable fees from his nonrecoverable fees; and (3) the trial court erred by denying Cyphers relief on his counterclaims. Because the trial court had subject matter jurisdiction to adjudicate the lien's validity, because Cyphers failed to preserve his fee-segregation argument, and because there are unchallenged alternative grounds for the trial court's rejection of Cyphers's counterclaims, we will affirm.

## I. Background

In 2014, Margaret's roof was damaged. According to her neighbor—Cyphers—Margaret agreed to sell him her property via a reverse mortgage in exchange for his completing the necessary repairs. But Margaret never signed a contract memorializing this alleged agreement, nor did she ever sign anything transferring her home to Cyphers. Nonetheless, Cyphers, acting through his company, Presidential One Enterprises, LLC (together "Cyphers"), arranged for repairs to be completed in 2015.[2] Cyphers later claimed that Margaret's son—Dennis—had assured him that, despite the lack of a written contract, Cyphers would be reimbursed for the cost of repairs or would receive a right of first refusal when Margaret sold her home. So, when Cyphers saw Margaret preparing to sell the home in 2019, he believed her to be reneging on her commitments, and he filed a

---

[2]The parties dispute the extent to which the repairs were completed and whether the repairs were performed in a good, workmanlike manner.

mechanic's lien[3] on Margaret's home for the alleged cost of the completed repairs: $33,131.

Because of Cyphers's lien, when Margaret sold her home to a third party, the title company withheld $50,000 from her sales proceeds.[4] Margaret demanded that Cyphers remove the lien, and when he refused, Dennis filed suit on her behalf (hereinafter, "Cunningham").[5] Cunningham sought to quiet title to the property and pleaded for relief under Chapter 37 of the Civil Practice and Remedies Code (the Declaratory Judgments Act) and Section 53.160 of the Property Code (which provides for the summary removal of a mechanic's lien).[6]

A few months into the suit, and for unspecified reasons, the title company released the withheld funds to Cunningham. Nonetheless, Cunningham continued to seek recovery of his costs and attorney's fees, exemplary damages, and the interest

_____

[3]*See* Tex. Prop. Code Ann. §§ 53.001(5) (defining "[m]echanic's lien" to encompass any lien provided by Chapter 53), 53.021(1) (providing for statutory lien in favor of a person who "under a contract with the owner or the owner's agent . . . labors or furnishes labor or materials for construction or repair of an improvement").

[4]Dennis did not know why the title company withheld $50,000 rather than $33,131.

[5]Dennis initially filed the claims on Margaret's behalf as her attorney in fact, but Margaret died while the case was pending, so Dennis continued to pursue her claims on behalf of her estate.

[6]Section 53.160 of the Property Code provides for a summary "motion to remove the claim or lien" in a "suit brought . . . to declare a claim or lien invalid or unenforceable." *Id.* § 53.160(a). Cunningham invoked this statute in his petition, seemingly treating the statute as an independent cause of action.

4

that had accrued while the money was being withheld. Meanwhile, Cyphers counterclaimed for breach of contract, promissory estoppel, and quantum meruit.

Following a bench trial, the trial court entered judgment for Cunningham and awarded him costs and attorney's fees, citing Section 37.009 of the Civil Practice and Remedies Code and Section 53.156 of the Property Code among other sources of authority. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (authorizing costs and attorney's fees in a declaratory judgment proceeding); Tex. Prop. Code Ann. § 53.156 (authorizing costs and attorney's fees in a proceeding to declare a lien invalid). The trial court also signed findings of fact and conclusions of law.

In the findings and conclusions related to Cyphers's counterclaims, the trial court determined that Cyphers had failed to prove the existence of a contract or promise to pay and that all of Cyphers's counterclaims were barred by the statute of limitations. It further found that, although Cyphers had alleged being owed $33,131, he had "submitted checks totaling [just] $7,603.54 that may have been paid," and such checks were mere "pictures" of instruments that were "non-negotiated or endorsed."[7]

---

[7]Cyphers's trial exhibits included photographs of the faces of several checks. In his testimony, Cyphers acknowledged that he had taken the photographs prior to the checks' being deposited and that, although he could have obtained copies of the endorsed, negotiated checks through his online banking system, he had not obtained or produced documentation confirming that the checks had been cashed. He further acknowledged that one of the checks had not been made payable to anyone at the time it was photographed, but he explained that due to his "lack of hearing . . . [he] was unable to understand the spelling of [the man's] name" when he wrote the check.

## II. Discussion

Cyphers contends that the trial court abused its discretion by awarding Cunningham attorney's fees because it lacked subject matter jurisdiction over Cunningham's claims and because Cunningham failed to segregate his fees. Plus, Cyphers adds, the court further erred by denying him relief on his counterclaims.

### A.    Subject Matter Jurisdiction

Cyphers first argues that the trial court exceeded its subject matter jurisdiction by awarding Cunningham attorney's fees because (1) Cunningham lacked standing to bring his claims challenging the lien's validity and (2) Cunningham's claims were rendered moot when the title company released the withheld funds.[8]

---

Cyphers also testified that he had made other cash payments to contractors and had taken photographs to document those payments, but he claimed the photographs had been destroyed when "[his] phone caught fire" and could not be retrieved "at a reasonable cost." In addition, Cyphers testified that he had performed some of the project management himself and was "estimating about 4 to 5 thousand of [the $33,131 in damages claimed] would be [his]."

[8]Cyphers is unclear regarding the precise cause(s) of action he intends to target with his standing and mootness challenges. Cunningham's live petition repeatedly described his primary claim as an "action to quiet title," but he also sought recovery of costs and attorney's fees under the Declaratory Judgments Act—implying a declaratory claim—and he sought to remove the lien under Texas Property Code Section 53.160, which provides for the summary removal of a lien in a proceeding to declare the lien invalid. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; Tex. Prop. Code Ann. § 53.160; *see also Arredondo's Mech. Servs., LLC v. Ortega Med. Bldg., LLC*, No. 14-22-00067-CV, 2023 WL 5622808, at *2 (Tex. App.—Houston [14th Dist.] Aug. 31, 2023, no pet.) (mem. op.) (explaining that "[a] summary motion that seeks a declaration that a lien is invalid [under Section 53.160] . . . seeks a summary adjudication of that claim and operates, in effect, as a motion for partial summary judgment"). Cyphers's standing challenge appears to target Cunningham's quiet title

Standing and mootness are related doctrines. *See Savannah Ct. P'ship v. Strait*, No. 02-23-00200-CV, 2024 WL 482227, at *9 n.22 (Tex. App.—Fort Worth Feb. 8, 2024, no pet.) (mem. op.). "[M]ootness has been described as the doctrine of standing set in a time frame[; t]he requisite personal interest that must exist at the commencement of the litigation," i.e., standing, "must continue throughout its existence" or the case becomes moot. *Id.* (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069 n.22 (1997) (internal citations and quotation marks omitted)). Both doctrines are components of subject matter jurisdiction, which is a threshold legal question that we review de novo. *See Busbee v. County of Medina*, 681 S.W.3d 391, 395 (Tex. 2023); *Blanton v. Red Desert Enters., LLC*, No. 02-23-00191-CV, 2024 WL 1925140, at *3–4 (Tex. App.—Fort Worth May 2, 2024, pet. filed) (mem. op.).

### 1. Standing

"The parameters of constitutional standing are well settled, requiring '[1] a concrete injury [2] that is . . . traceable to the defendant's conduct and [3] redressable

---

action, but he raises the challenge as an attack on the award of attorney's fees, which award expressly relies upon the Declaratory Judgments Act and Chapter 53 of the Property Code. Given this ambiguity, and because Cyphers presents his standing issue as a challenge to the fee award, we construe his challenge as an attack on Cunningham's standing to file a "proceeding to declare that [the] lien or claim [wa]s invalid or unenforceable." Tex. Prop. Code Ann. § 53.156; *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (providing for declaratory judgment claim to determine validity of or rights under certain written instruments).

by court order.'"[9] *Busbee*, 681 S.W.3d at 395 (quoting *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021)). The focus of the standing inquiry is the plaintiff's alleged injury at the time the suit is filed. *See id.* at 396 (noting that, although standing is generally analyzed on a claim-by-claim basis, claims can be grouped and analyzed by the injury alleged); *Blanton*, 2024 WL 1925140, at *4 (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993)).

Cyphers asserts that, because Cunningham sold the property before filing suit, the mechanic's lien "affect[ed] the property rights of [the] new owners"—not Cunningham—so Cunningham lacked standing to adjudicate the validity of the lien.

---

[9]Cunningham notes that nothing in Property Code Section 53.156—one of the primary statutes relied upon by the trial court in awarding costs and attorney's fees—requires a claimant to be a property owner to seek relief thereunder. *See* Tex. Prop. Code Ann. § 53.156 (providing for costs and attorney's fees in a proceeding to declare a lien invalid); *see also id.* § 53.160(a) (providing that any "party objecting to the validity or enforceability of the claim or lien" may file summary motion to remove lien in suit to declare lien invalid). Although we agree, this observation does not resolve the standing issue.

The Texas Supreme Court has emphasized the distinction between constitutional standing and "statutory or prudential considerations that . . . determine whether a plaintiff falls within the class of persons authorized to sue." *Busbee*, 681 S.W.3d at 395–96 (distinguishing between district attorney's standing to pursue counterclaims and her authority to enforce forfeiture statutes under Chapter 59 of the Code of Criminal Procedure). It has explained that "whether a plaintiff has . . . satisfied the requisites of a particular statute pertains in reality to the right of the plaintiff to relief rather than to the [subject matter] jurisdiction of the court to afford it." *Id.* (internal quotation marks omitted) (quoting *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020)); *see Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 441 (Tex. 2023) (reiterating that "the satisfaction of a statutory or common-law prerequisite to a plaintiff's filing suit or recovering on a claim is not an issue of standing but of merits" and clarifying that whether the Insurance Code created a private damages action was not a jurisdictional issue).

8

But when Cunningham filed the underlying proceeding challenging the lien's validity, the title company was still actively withholding $50,000 of Cunningham's sales proceeds due to the outstanding mechanic's lien. These withheld funds amounted to a concrete injury traceable to Cyphers's filing of the lien, and the trial court's resolution of Cunningham's claims could redress that injury by determining whether or not the lien was valid—and thus whether or not Cunningham was entitled to the $50,000. *See Busbee*, 681 S.W.3d at 396 (holding district attorney's allegations that county was "attempting to sell property and retain funds that rightfully belong[ed] to [her] . . . amount[ed] to a concrete injury in fact that [wa]s traceable to [the county's] conduct" and that was redressable by judgment quieting title or declaring her entitled to sales proceeds). Cunningham therefore had constitutional standing to bring his claims adjudicating the lien's validity.

And, in truth, Cyphers implicitly recognizes as much by his next argument: that the title company's disbursement of the withheld funds rendered Cunningham's claims moot, i.e., that the disbursement alleviated the injury that gave Cunningham standing. *See Savannah Ct. P'ship*, 2024 WL 482227, at *9 n.22 (noting relationship between standing and mootness).

2.      **Mootness**

A case becomes moot if a controversy ceases to exist or a party no longer has a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). Cyphers argues that, when the title company disbursed the $50,000

9

that it had withheld from Cunningham's sales proceeds, his legally cognizable interest in the case vanished, and his claims challenging the lien's validity became moot, depriving the trial court of subject matter jurisdiction to proceed and award him attorney's fees.

But "a dispute over attorney[']s fees is a live controversy" that can "breathe[] life" into a case and prevent it from becoming moot. *Id.* at 642–43 (recognizing that dispute over attorney's fees prevented declaratory judgment appeal from becoming moot); *Savannah Ct. P'ship*, 2024 WL 482227, at *8 (noting in declaratory judgment context that even if the trial court lacks subject matter jurisdiction over the underlying declaratory claim, it has jurisdiction to resolve the claim for attorney's fees); *Esau v. Robinson*, No. 13-06-00484-CV, 2008 WL 2375861, at *2 (Tex. App.—Corpus Christi–Edinburg June 12, 2008, no pet.) (mem. op.) (rejecting mootness argument and holding that appellant's release of the challenged lien did not deprive the trial court of jurisdiction to award appellee attorney's fees under Property Code Section 54.156). Cunningham's request for attorney's fees remained pending after the title company disbursed the $50,000, so the disbursement did not moot his case.[10]

The trial court therefore had subject matter jurisdiction over Cunningham's claims; we overrule this issue.

---

[10]Plus, even after the disbursement, Cunningham still sought to recover exemplary damages and the interest that had accrued on the $50,000 while it was being withheld. Because the parties focus their arguments on the fee issue, though, we do likewise.

10

**B.      Segregation of Fees**

Next, Cyphers asserts that the trial court's award of attorney's fees was inequitable, unjust, and unsupported by the evidence because Cunningham did not segregate his recoverable and unrecoverable fees—he did not identify which fees were incurred for which causes of action, nor did he distinguish between the fees incurred before the disbursement of funds and those incurred afterward.

But "if no one objects to the fact that the attorney's fees are not segregated . . . , then the objection is waived." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *accord Brand v. Degrate-Greer*, No. 02-15-00397-CV, 2017 WL 1756542, at *8 (Tex. App.—Fort Worth May 4, 2017, no pet.) (mem. op. on reh'g); *Ihnfeldt v. Reagan*, No. 02-14-00220-CV, 2016 WL 7010922, at *17 (Tex. App.—Fort Worth Dec. 1, 2016, pet. denied) (mem. op.); *Rotella v. Cutting*, No. 02-10-00028-CV, 2011 WL 3836456, at *7 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op. on reh'g en banc). And here, Cyphers did not object to Cunningham's failure to segregate his fees. He made no mention of segregation when Cunningham's counsel offered his billing statements into evidence,[11] he did not object on that basis during

---

[11]Cyphers's only objection to the billing statements was that Cunningham's counsel could not "prove up" the exhibit through his client. After Cunningham's counsel confirmed the predicate grounds for the admission of the billing statements as business records, the trial court admitted the billing statements without any additional objections.

Cunningham's counsel's fee-related testimony,[12] and he said nothing of fee segregation in his trial brief. *Huey-You v. Huey-You*, No. 02-16-00332-CV, 2017 WL 4053943, at *2 (Tex. App.—Fort Worth Sept. 14, 2017, no pet.) (mem. op.) (holding fee-segregation challenge waived when appellant failed to raise it prior to entry of judgment and reciting rule that, "[i]n a bench trial, the objection that attorney's fees are not segregated as to specific claims must be raised before the trial court issues its ruling"). By failing to raise his fee-segregation argument below, Cyphers waived his complaint. *See* Tex. R. App. P. 33.1(a)(1).

And because this unpreserved fee-segregation complaint is the sole basis for Cyphers's broader allegation that the award of attorney's fees is inequitable, unjust, and lacking in evidentiary support, we overrule this issue. *Cf. Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (recognizing that, even when one party objects to failure to segregate, "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be"); *Green Int'l*, 951 S.W.2d at

---

[12]During Cyphers's cross-examination of Cunningham's counsel, he used his questions to emphasize that the property had been sold prior to the lawsuit's initiation and that the title company had released all funds initially withheld, but Cyphers did not connect the dots of this cross-examination by raising an objection to the lack of segregation. The trial court could have understood such cross-examination questions as advancing Cyphers's jurisdictional contentions rather than as challenges to the lack of segregation. *Cf. Kleas v. BMC W. Corp.*, No. 03-05-00190-CV, 2008 WL 5264883, at *6 (Tex. App.—Austin Dec. 19, 2008, pet. denied) (mem. op.) (holding party failed to preserve challenge to lack of fee segregation when it cross-examined opposing party's counsel on segregation but did not object).

389–90 (holding trial court could not disregard jury's award of fees based on lack of segregation when neither party objected to failure to segregate).

## C.    Rejection of Counterclaims

Finally, Cyphers argues that the trial court erred by denying him recovery on his counterclaims for breach of contract, promissory estoppel, and quantum meruit. He contends that the court ignored the great weight and preponderance of the evidence by finding that (1) Cyphers failed to prove the existence of an oral contract or promise to sell the property, (2) he failed to establish the elements of quantum meruit, and (3) his claims were barred by the statute of limitations. But Cyphers has not challenged other, alternative grounds for the trial court's judgment.

"[I]f an independent ground may fully support the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then we 'must accept the validity of that unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless . . . .'" *Rosenstein v. Condron*, No. 02-23-00098-CV, 2024 WL 123656, at *4 (Tex. App.—Fort Worth Jan. 11, 2024, no pet.) (mem. op.) (quoting *S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 419 (Tex. App.—Fort Worth 2014, no pet.) (cleaned up)). Here, as Cunningham points out, Cyphers has not challenged the trial court's finding that Cyphers's evidence of damages was neither credible nor consistent with the amount he had requested. And this finding provided an independently sufficient, alternative basis for the rejection of Cyphers's counterclaims. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574

S.W.3d 882, 890 (Tex. 2019) (listing elements of breach of contract action, one of which is that "the plaintiff sustained damages due to the breach"); *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 736 (Tex. 2018) (recognizing that "[a] party must introduce evidence on the correct measure of damages to recover on a quantum[ ]meruit claim, meaning that the party must establish the reasonable value of work performed or materials furnished"); *Wade v. XTO Energy Inc.*, No. 02-12-00007-CV, 2013 WL 257361, at *6 (Tex. App.—Fort Worth Jan. 24, 2013, no pet.) (mem. op.) (holding that, because appellants "presented no evidence of reliance damages, that is, any amounts necessary to place them in the position they would have been in had they not relied on [appellee's] promise, their promissory estoppel claim fails").

Nonetheless, Cyphers insists that his opening brief preserved the damages issue for review. Cyphers urges us to construe his opening brief liberally and to read a damages challenge into his broad attack on the trial court's rejection of his counterclaims. *See* Tex. R. App. P. 38.9 (entitled "Briefing Rules to Be Construed Liberally"); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver."). But Cyphers's general challenge to the rejection of his counterclaims is insufficient to preserve the damages issue absent argument and authorities specific to that complaint. *Cf. Rollins v. Denton County*, No. 02-14-00312-CV, 2015 WL 7817357, at *2 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.) (stating in summary judgment context that "[e]rror is not preserved as to every ground on

14

which . . . judgment could be based simply by raising a general issue; the appellant must also support the issue with argument and authorities challenging each ground"). While appellate courts liberally construe briefs to avoid waiver, our construction must remain "reasonabl[e]," *Perry*, 272 S.W.3d at 587; we cannot manufacture appellate complaints out of whole cloth, *see Tucker v. Fort Worth & W. R.R. Co.*, No. 02-19-00221-CV, 2020 WL 3969586, at \*1 (Tex. App.—Fort Worth June 18, 2020, pet. denied) (mem. op.) (noting that "[i]t is the appealing party's burden to discuss his assertions of error, and '[w]e have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error'" (quoting *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied)). Not only does Cyphers barely mention his evidence of damages in his opening brief, but he does so just long enough to deny that the trial court found against him on damages.

In his challenge to the trial court's rejection of his quantum meruit counterclaim, Cyphers's opening brief represents that the trial court found that he had "presented evidence of checks in the amount of $7,603.54."[13] In reality, the trial court found that he "*allege*[d he was] owed $33,131.00, but only submitted checks totaling $7,603.54 that *may*"—or, by implication, may not—"have been paid." [Emphasis

---

[13]In a footnote, Cyphers notes another piece of evidence that he claims supported his claim of $33,131 in damages: the affidavit accompanying his lien. But the trial court's findings and conclusions did not view the lien favorably either; the court repeatedly stated that the "lien was filed in bad faith."

added.]  And the trial court described the relevant exhibits as "consisting of pictures of five (5) non-negotiated or endorsed[] checks," conveying its opinion that the exhibits were not credible.  Cyphers's opening brief—even liberally construed—did not challenge this damages finding.[14]

Because Cyphers has not challenged the trial court's finding that he failed to prove his damages, and because the finding provided an independently sufficient alternative ground for the trial court's rejection of Cyphers's counterclaims, we must affirm on that unchallenged basis.  *See Rosenstein*, 2024 WL 123656, at *4; *S.W.*, 435 S.W.3d at 419.  We overrule Cyphers's final issue.

### III.  Conclusion

Having overruled all of Cyphers's issues, we affirm the trial court's judgment. Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  August 15, 2024

---

[14]In fact, even after Cunningham's responsive brief highlighted Cyphers's failure to challenge the damages finding, and even after Cyphers used his reply brief to protest that he had not waived the issue, he failed to accompany that protestation with a discussion of how or why the great weight and preponderance of the evidence required a finding that he had suffered the alleged $33,131 in damages.